# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| CORRINDA SPAULDING, | ) | |
| | ) | No. 14 CV 5255 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Magistrate Judge Young B. Kim |
| | ) | |
| CAROLYN W. COLVIN, Acting Commissioner of the Social Security Administration, | ) ) ) | |
| | ) | May 22, 2015 |
| Defendant. | ) | |

## MEMORANDUM OPINION and ORDER

Corrinda Spaulding claims that she became disabled in December 1993 from a combination of gastrointestinal ailments. Spaulding filed for Disability Insurance Benefits ("DIB") in October 1996. Although her DIB claim has been denied five times by the Social Security Administration ("SSA") in the nearly two decades that have elapsed since its filing, each denial has been reversed by the federal judiciary and remanded for further administrative proceedings. After the Appeals Council declined to review the administrative law judge's ("ALJ") most recent decision denying benefits to Spaulding, she filed this suit seeking yet another judicial review. *See* 42 U.S.C. § 405(g). Before the court are the Commissioner's motion for voluntary remand for further administrative proceedings and Spaulding's motion for summary judgment. For the following reasons, the Commissioner's motion is granted and Spaulding's motion is granted in part and denied in part:

**Procedural History**

The procedural history of this case spans a jaw-dropping 19-year epoch involving six separate trips to federal court and touching the administrations of five different SSA Commissioners. This unfortunate state of affairs originated when Spaulding filed her DIB claim in October 1996, alleging that her disability began in December 1993. (Administrative Record ("A.R.") 762.) Spaulding's application was denied by an ALJ in June 1998 and again by the Appeals Council in September 1999. (Id.) The district court affirmed the ALJ's decision but the Seventh Circuit reversed in February 2002 and returned the case to the SSA for further proceedings. (Id.)

Since the Seventh Circuit's remand, Spaulding's DIB claim has languished in a seemingly endless loop between administrative and federal court proceedings. After a supplemental hearing before the same ALJ who had previously denied her DIB claim, Spaulding's claim was denied for a second time in April 2003, and the Appeals Council declined to review the appeal. (Id.) But when Spaulding sought judicial review for a second time, the district court remanded in November 2003, ordering that a different ALJ handle the proceedings on remand. (Id.) Spaulding's third sojourn through the SSA's adjudicative machinery was partially successful in that her Supplemental Security Income ("SSI") application, filed protectively on April 24, 2004, was granted, but her DIB claim was again denied by an ALJ, only to be remanded again by the district court in March 2007. In an order remanding the case for the third time, the district court admonished the government that "[t]here

has to be some way to reach closure," and that "[t]he ALJ's failure to provide a full and fair credibility determination and assessment of the entire record will lead us to . . . grant . . . plaintiff's benefits." (A.R. 567.) But in February 2008, the same ALJ yet again found that Spaulding was not entitled to receive DIB and the district court again remanded to the SSA in March 2010, thus completing the fourth episode of the SSA's increasingly absurd attempt to properly adjudicate Spaulding's claim. On remand, an ALJ denied Spaulding's claim for the fifth time in February 2011, but the district court once again sent the case back to the SSA, also for the fifth time, in August 2012. (Id. at 791.)

Now in its sixth trip to the district court after the latest unfavorable decision before an ALJ, (id. at 762-75), and nearly two decades after Spaulding filed her DIB claim, the government confesses that the ALJ again failed to correctly apply the law, and asks this court to remand for proper adjudication before an ALJ for the seventh time, all but guaranteeing that Spaulding's case—which, for context, began during the first term of President William J. Clinton—will exceed two decades of waiting. Understandably frustrated with the SSA's inability to render an adequate decision, Spaulding opposes the government's motion to remand and asks the court to declare that she is entitled to award of benefits.

**Facts**

Because the parties do not dispute that the case should be remanded and because this is the sixth time this same case has surfaced in federal district court, only a brief summary of certain relevant facts is necessary here. A lengthy

3

recounting of Spaulding's medical history may be found in *Spaulding v. Astrue,* 702 F. Supp. 2d 983, 987-994 (N.D. Ill. 2010).

Spaulding claims that she has been disabled since December 1993 because of varying combinations of ailments including diarrhea, constipation, gastroesophageal reflux, nausea, gastritis, vomiting, and dry heaves. (Id. at 765.) In 1992, an x-ray revealed a small hiatal hernia, which did not appear on a subsequent 1992 CT scan, but did appear on an esophogastroduodenoscopy. (Id.) Over the years, Spaulding's doctors have treated her with Zantac, Prilosec, and Pepsid, as well as other drugs as necessary, with mixed results. (Id. at 765-66.) Spaulding was last insured for Title II DIB on December 31, 1998, meaning that in order to receive DIB she must show her conditions were disabling on or before that date. (Id.)

Spaulding's most recent hearing before an ALJ took place on March 21, 2014. (Id. at 858.) At the hearing, Spaulding testified extensively about her gastrointestinal problems in the 1990s. (Id. at 870-94.) A medical expert ("ME") testified that Spaulding's testimony about high frequency diarrhea was inconsistent with her periods of weight gain, but that her disability was a "judgment call" based on the frequency and severity of her symptoms. (Id. at 899.) The ME did not place any exertional limitations on Spaulding. (Id.) A vocational expert ("VE") testified that a hypothetical individual requiring two five-minute unscheduled breaks per day would be unable to perform Spaulding's past relevant work as a bank teller, although employers could probably tolerate two unscheduled fifteen-minute breaks

4

per week. (Id. at 900-01.) The ALJ did not explain why he pitched the fifteen, five, and two-minute unscheduled break hypotheticals to the VE. (See id.) Spaulding also submitted documentary evidence of her medical condition in support of her claim for DIB.

## Analysis

The parties both agree that the ALJ failed to give Spaulding a fair evaluation of her claim for DIB. (Compare R. 15, Pl.'s Br. at 9-17 with R. 20, Govt.'s Br. at 2-6.) In asking for a voluntary reversal and remand of this sixth failure, the government concedes that the ALJ's decision "does not adequately address evidence of record, most notably medical experts' testimony in prior hearings, which the ALJ did not evaluate at all." (R. 20, Govt.'s Br. at 2.) Spaulding similarly argues that the ALJ's opinion "is untethered to any evidence in the record including from multiple Agency experts." (R. 15, Pl.'s Br. at 2.) Because the parties agree that the ALJ's decision cannot be affirmed, the remaining question before the court is whether the case should be remanded for further proceedings, as the government argues ought to be done, or whether this court should simply direct the Commissioner to award benefits to Spaulding. District courts "have the statutory power to affirm, reverse, or modify the SSA's decision, with or without remanding the case for further proceedings." *Allord v. Astrue,* 631 F.3d 411, 415 (7th Cir. 2011) (citing 42 U.S.C. § 405(g)). Within these statutory powers, district courts retain the "ability to remand with instructions for the Commissioner to calculate and award benefits." *Id.* (citing *Campbell v. Shalala*, 988 F.2d 741, 744 (7th Cir. 1993)).

5

Spaulding argues that this court should simply award benefits at this juncture rather than remand the case for a sixth time. Specifically, she argues that the government has engaged in a "charade" and that the SSA's repeated inability to issue a proper decision after nearly two decades is plainly unfair. (R. 15, Pl.'s Br. at 22.) Seizing on language from *Wilder v. Apfel*, 153 F.3d 799, 801 (7th Cir. 1998), Spaulding contends that "[s]ending the case back for a 7th hearing would serve no purpose, and at this point would undermine fairness and justice." (R. 23, Pl.'s Resp. at 7.) Spaulding also points to a prior decision remanding her claim, *Spaulding v. Barnhart*, No. 05 CV 6311, 2006 WL 2524132, at *1 (N.D. Ill. Jul. 14, 2006), in which the district court wrote with exasperation "[t]here has got to be some way to reach closure. Perhaps at some point the agency abdicates its authority to make the determination and surrenders that authority to the court . . . ." According to Spaulding:

> Although the length of time a case has been pending or the number of times a claimant has been to an administrative hearing may not alone mandate an outright award of benefits, these are factors which highlight the Agency's inability to sustain a reasoned bases for the denial of benefits and corroborate that the record directs a disability finding.

(R. 15, Pl.'s Br. at 18.) But frustration with the SSA is not itself an adequate ground for the court to order the payment of benefits: the Seventh Circuit has explained that the stern language of *Wilder* is nonetheless grounded in the principle that "an award of benefits is appropriate only if all factual issues have been resolved and the record supports a finding of disability." *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 356 (7th Cir. 2005). In other words, "obduracy" on the part

6

of the SSA is not enough to warrant an award of benefits, *see Briscoe*, 425 F.3d at 357.

Spaulding's next tack is to argue that "there are no outstanding factual issues," and that "the record supports only one conclusion—entitlement to disability benefits." (R. 15, Pl.'s Br. at 20.) To this end, Spaulding argues that the opinion of the ME from her most recent hearing is uncontroverted and supports a finding of disability. (R. 23, Pl.'s Resp. at 4-5.) Spaulding points to the ME's testimony that her limitations were a judgment call "[i]n terms of severity of symptoms," and characterizes this testimony as "completely consistent" with Spaulding's own description of her limitations. But that assertion is an overstatement because the ME placed no exertional limitations on Spaulding at all. (A.R. 899.) And, because Spaulding ignores a great deal of evidence in the record that conflicts with her own testimony about her symptoms, she has missed an opportunity to explain why she believes the record supports only one conclusion.

Although the government concedes that the ALJ's decision is irredeemably flawed, it nevertheless argues that the record contains numerous unresolved factual issues that prevent this court from awarding benefits outright. (R. 20, Govt.'s Br. at 8-9.) The government specifically identifies evidence from two physicians, Dr. Jilhewar and Dr. Miller, that conflicts with Spaulding's assertion that she is clearly entitled to benefits. (Id.) Dr. Miller testified in a November 2002 hearing that extensive medical tests in Spaulding's record had not revealed any gastrointestinal problems that would meet listings-level severity. (A.R. 313.) Dr.

7

Jilhewar similarly testified in October 2007 that he found no support for frequent incontinence in Spaulding's treatment records and in any event bowel movements are "most of the time or 80 percent of the time, precipitated by eating and so one can manage the bowel movement around the lunch time, breakfast or dinner time." (Id. at 623.) In light of direct testimony from medical experts that Spaulding does not have a listings-level impairment or combination of impairments and is suitable for light work, the government argues that benefits cannot be awarded because of unresolved factual issues.

The Seventh Circuit has made clear that a district court should not award benefits if evidence and testimony in the record would support the conclusion that the claimant is not entitled to benefits. *Allord*, 631 F.3d at 416. In *Allord*, the Seventh Circuit upheld the remanding district court's refusal to award benefits because "contradictory inferences could be drawn from the physicians' testimony," and explained that it is incumbent upon the claimant to "extinguish the lingering doubt regarding . . . qualification for disability benefits." *Id.* at 417.

Here, Spaulding fails to meet the requirements of *Allord* for two reasons. First, she has provided very little documentation of her alleged disability. Second, expert medical testimony suggests that Spaulding does not have a gastrointestinal impairment that would prevent her from working. (See, e.g., A.R. 313-14.) Dr. Miller testified that Spaulding did not meet any of the Digestive Gastrointestinal impairment listings, noting that although Spaulding underwent "extensive testing," the fact remained that there was "nothing there that establishes

8

that she has anything that approaches these [sic] category of [gastrointestinal] impairments." (Id.) Spaulding cites nothing to call *Allord* into doubt,¹ and makes no attempt to reconcile any of the conflicting medical evidence in her voluminous record with her bare assertion that all factual issues have been resolved. Accordingly, she fails to "extinguish the lingering doubt" about her entitlement to DIB. *See Allord,* 631 F.3d at 417.

The court concludes by noting that if it were simply to grant Spaulding's request out of frustration with the SSA, however justified that frustration might be, the case would likely be appealed, then perhaps reversed under *Allord* and *Briscoe*, thereby prolonging the resolution of this claim even longer. There is no question that the SSA has done Spaulding, itself, and the federal courts a serious disservice with its lamentable handling of this DIB claim. Perhaps there should be a "six strikes and you're out" rule, but presently no such rule exists and "[o]bduracy is not a ground on which to award benefits; the evidence properly in the record must demonstrate disability." *Briscoe*, 425 F.3d at 357. This court does not have the authority to award benefits when factual issues persist about whether Spaulding is disabled at all. Unpalatable as it may seem, the required course of action here is to

---

¹ The bevy of cases from Maine and Massachusetts cited by Spaulding does not get her past *Allord* and *Briscoe*, which have never been overruled or called into doubt and which are binding on this court. And although Spaulding also identifies *Petrey v. Astrue*, No. 10 CV 317, 2010 WL 5158100, at *8 (N.D. Ill. Dec. 14, 2010), as support for an award of benefits even in the face of apparently conflicting medical testimony, *Petrey* is a district court opinion that predates the Seventh Circuit's binding decision in *Allord*.

9

remand the case and to demand that the SSA abide by its own standards and get it right on what will be its seventh try.

## Conclusion

For the foregoing reasons, the Commissioner's motion is granted, Spaulding's motion is granted in part and denied in part, and the matter is remanded to the SSA for further proceedings.

**ENTER:**

_____
**Young B. Kim**
**United States Magistrate Judge**